No. 594          July 1, 2026          59

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEVIN DEAN HICKS, SR.,
aka Kevin D. Hicks, aka Kevin Dean Hicks,
aka Kevin Dean Hicks,
aka Kevin Hicks, Sr.,
*Defendant-Appellant.*

Jackson County Circuit Court
18CR43805, 22CR21155; A180711 (Control), A180712

Timothy Barnack, Judge.

Argued and submitted April 23, 2025.

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

In this consolidated criminal appeal, defendant appeals from a judgment of conviction for second-degree murder, ORS 163.115, second-degree abuse of a corpse, ORS 166.085, and first-degree arson, ORS 164.325, arising from an incident in which he strangled his wife to death and then set a fire at the scene. Defendant raises three assignments of error. In his first assignment of error, defendant asserts that the trial court erred by denying his motion for a pre-trial election as to which protected property was the subject of the arson charge. In his second through tenth assignments of error, defendant asserts that the trial court erred by allowing in graphic photos of the crime scene and autopsy. In his eleventh assignment of error, defendant asserts that the trial court erred when it failed to instruct the jury it had to be unanimous to reject a defense of extreme emotional distress (EED). We conclude that the trial court did not abuse its discretion by denying defendant's motion for a pre-trial election. We conclude that the trial court did not err by allowing in the photos in the manner it did. Lastly, we conclude that the trial court was not required to give defendant's proposed instruction. We thus affirm.

## I.   BACKGROUND

Defendant and T were married, but separated in 2017, after which defendant began living in a trailer on land owned by B. On June 30, 2018, T and defendant were arguing in the trailer. Defendant, by his own words, "snapped" and attacked T, strangling her to death. He then lit a fire in the trailer. After setting the fire, defendant entered B's house, told B he had just killed his wife, and that he had set the trailer on fire. Firefighters arrived and began fighting the blaze; police arrived soon after and arrested defendant. Defendant told police that he had just killed his wife and set the trailer on fire in an attempt to kill himself. After having been Mirandized, defendant again repeated that he had killed his wife and set a fire in an attempt to kill himself, which was captured on an officer's body camera and shown to the jury. Defendant repeated his confessions in

a subsequent interview in police custody, which was also shown to the jury.

T's body was found in the middle of the travel trailer, near the kitchen area. Investigators concluded that the fire had started in the back bedroom. Medical examiner Dr. James Olson testified that the cause of T's death was strangulation, not fire. In support of that was the examiner's finding that there was no soot in T's airways, meaning that she had stopped breathing by the time the fire was burning. To assist the testimony of Olson and Detective Seese, the state offered photos of the crime scene and body, including Exhibits 1, 2, and 5 through 11—all of which defendant objected to pre-trial. The trial court admitted those exhibits, with some limitations on the scope of their relevance. Exhibits 1 and 2 were photos of the crime scene showing T's extremely charred body buried in debris. Exhibit 5 was an autopsy photo of T's burned head, neck, and upper chest. Exhibits 6 and 7 were autopsy photos that showed T's burned skull and upper back. Exhibit 8 was a photo of T's clothes from her backside, showing they were partially unburnt. Exhibit 9 was an autopsy photo of T's larynx and trachea, which the examiner had cut open for examination; the photos revealed no soot. Exhibit 10 showed thermal damage to T's extremities and torso. Exhibit 11 also showed the dissected trachea, absent soot, which the medical examiner opined had evidence of a pre-death injury.

Defendant objected to the photos pre-trial. The court allowed the photos in for the following purposes, and in each case found that the photos were not substantially more prejudicial than probative. Exhibits 1 and 2 were admitted to show the crime scene. Exhibit 5 was admitted to show that Olson was unable to visually determine whether T had external injuries (such as from being strangled) due to the extent of the burns. Exhibits 6, 7, 8 and 10 were admitted to establish the origin of the fire (*i.e.*, not under, on, or near to T). Exhibits 9 and 11 were admitted to prove abuse of a corpse.

After the photos had been shown to the jury, the trial court had a conversation with the parties in which it reiterated that it had allowed some photos in to prove the

arson, not the murder, and that it was concerned about how the photos were being used. The state argued that the court had allowed the photos for both purposes. All the exhibits were shown to the jury, but the trial court ultimately struck Exhibits 6, 7, and 8 as cumulative, and the jury was instructed to ignore them.

The fire entirely destroyed the trailer, an electrical hookup, a nearby off-road vehicle, and a shed. The fire also partially damaged a shipping container and a nearby vehicle. B testified that at the time of the fire, all of the items on the property except for the trailer, shipping container and the off-road vehicle were owned by persons other than defendant.

The fire had started to spread through the brush and grass on the property line in the direction of the neighbor's house but was extinguished by firefighters. The wildland fire spread about 100 feet from the trailer. The arson investigator testified that an afternoon wind was beginning to pick up, which would have endangered buildings to the northwest of the trailer, in the path of easily burned grass.

The state originally charged defendant with second-degree murder, ORS 163.115, second-degree abuse of a corpse, ORS 166.085, and first-degree arson, ORS 164.325. The state dismissed the arson charge and refiled it in a separate indictment and case number. The cases were joined for trial. Defendant asserted the affirmative defense of EED, thus asserting he should be convicted of first-degree manslaughter rather than second-degree murder. *See* ORS 163.118(1)(b). Defendant's theory was that he had suffered a sudden emotional break, strangled his wife, and then started the fire in a suicide attempt, all of which evinced EED. The jury rejected his defense and found defendant guilty on all counts. On the murder conviction, the trial court sentenced defendant to life in prison with the possibility of parole after 25 years. On second-degree abuse of a corpse, the court imposed 20 days in jail. For the first-degree arson conviction, the court imposed 36 months in prison, to run consecutively to the other sentences. Defendant timely appealed.

## II.  ANALYSIS

### A.  *Motion to Elect*

In his first assignment of error, defendant asserts that the trial court erred when it denied his pretrial motion to elect regarding which property was "protected" for the purpose of the arson charge. We conclude that, under the circumstances, the trial court did not abuse its discretion by denying defendant's morning-of-trial motion.

On the morning of trial, defendant moved to force the state to elect which structure it was alleging as the "protected property of another." The trial court denied the motion. The issue was raised again mid-trial, without a new ruling by the trial court. After the state's rebuttal closing, and while discussing jury instructions, the state told the court that it had elected, for the purpose of argument to the jury, "a shop"—although which of the two shops on the property the state meant was never clarified—was the protected property that had been endangered; the state so argued in closing; and the jury was so instructed. *See State v. Payne*, 298 Or App 411, 422, 447 P3d 515 (2019) (casual resolution of an election issue, while frequent, is improper; the jury must be instructed either with a concurrence instruction, or the particular facts argued for). Defendant challenges only the pre-trial denial on appeal.

As relevant here, ORS 164.325 provides that:

"(1)  A person commits the crime of arson in the first degree if:

"(a)  By starting a fire or causing an explosion, the person intentionally damages:

"(A)  *Protected property* of another;

"(B)  Any property, whether the property of the person or the property of another person, and such act recklessly places another person in danger of physical injury or *protected property* of another in danger of damage; ***"

(Emphasis added.) In turn, and as relevant here, protected property "means any structure, place or thing customarily occupied by people ***." ORS 164.305(1); *see State v. Perez*, 13 Or App 288, 290, 508 P2d 833 (1973) (a car was not a

customarily occupied place, but a nearby camper was); *cf. State ex rel. Juv. Dep't. v. Roff*, 94 Or App 430, 765 P2d 244 (1988) (cabinet making shop was not protected property of another during the nighttime when it was not customarily occupied).[1] Property of another "means property in which anyone other than the actor has a legal or equitable interest that the actor has no right to defeat or impair, even though the actor may also have such an interest in the property." ORS 164.305(2).

We review a trial court's ruling regarding the timing of an election for abuse of discretion. *State v. Bravo-Chavez*, 343 Or App 326, 335, 578 P3d 725, *rev den*, 374 Or 437 (2025). Discretion "refers to the authority of a trial court to choose among several legally correct outcomes." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). "If there is only one legally correct outcome, then 'discretion' is an inapplicable concept." *Id*. In addition, an exercise of discretion "may be predicated on certain subsidiary determinations—either findings of fact or conclusions of law—that trigger their own standards of review." *State v. Burton*, 373 Or 750, 760, 571 P3d 736 (2025) (internal quotation marks omitted).

We laid out the relevant law in *State v. Hernandez-Coronado*, 348 Or App 412, 415, ___ P3d ___ (2026):

> "As we explained in *Bravo-Chavez*, a defendant has a 'right to notice of the charges against him sufficient to prepare and present his defense.' [*Bravo-Chavez*, 343 Or App] at 338 (internal quotation marks omitted). To enforce that right, a defendant may file a motion for pretrial election 'to obtain notice of the factual occurrence that is the basis for a charge.' *Id*. at 336. An election must 'afford the defendant sufficient time, after the choice has been made, to defend himself properly.' *Id*. at 339 (internal quotation marks omitted). Courts 'should compel an election when it appears that, if the application is denied, the defendant will be \* \* \* prevented from properly making his defense.' *Id*. (internal quotation marks omitted)."

Unlike *Bravo-Chavez*, in which there were some 1,000 instances of abuse but far fewer charges, defendant

---

[1] In this case, all property at risk was represented as private; however, separate rules apply to public buildings and forestland. *See State v. Haynes*, 149 Or App 73, 80, 942 P2d 295 (1997), *rev den*, 328 Or 275 (1999).

here knew exactly the place, the day, and the time of the alleged crime—not least of which because he repeatedly admitted that he had started the fire. We understand that defendant argues he did not know exactly which piece of property he was accused of endangering, but the universe of potential properties was not large.

Most importantly, this case is much like *Hernandez-Coronado*. The purpose of a pretrial election is to give defendants notice of the specific criminal acts that the state will prosecute at trial, in time for defendants to tailor their defense to those specific incidents. *Hernandez-Coronado*, 348 Or App at 416. "When a defendant makes a motion for pretrial election on the first day of trial *** it is generally within the trial court's discretion to deny that motion because the timing of the motion defeats the purpose of the election." *Id.* Here, defendant waited until the morning of trial to file his motion to elect, and there are no other circumstances that distinguish it from *Hernandez-Coronado*. The trial court did not abuse its discretion by denying defendant's day-of-trial motion to elect.

B.   *The Crime Scene and Autopsy Photos*

In his second through tenth assignments of error, defendant asserts that the trial court erred by admitting Exhibits 1, 2, and 5 through 11. He argues that the graphic photos—which he describes as "gruesome"—were irrelevant and substantially more prejudicial than probative. Defendant argues the photos were particularly unfairly prejudicial considering his EED defense. The state acknowledges that the photos were graphic but argues that they were probative for the purposes the trial court admitted them for and that the trial court followed the proper procedure and did not abuse its discretion.

We review a trial court's determinations of relevance under OEC 401 for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). "Under OEC 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *State v. Boauod*, 302 Or App 67, 72, 459 P3d 903 (2020) (internal quotation marks and brackets omitted). "Although we

examine whether the trial court properly applied the balancing test that OEC 403 prescribes for errors of law, we review the trial court's ultimate determination as to whether evidence is unfairly prejudicial under OEC 403 for abuse of discretion." *Id.* at 72-73 (quotation marks omitted). "In evaluating a trial court's discretionary ruling under OEC 403, our role is to assess whether the court's decision falls within the range of legally permissible choices." *Id.* at 73 (quotation marks omitted). "Absent a claim that a trial court has made a legal or factual error in making a discretionary determination under OEC 403, to determine whether the court's evidentiary ruling represents an abuse of discretion, we examine whether the court exercised its discretion to an end not justified by, and clearly against, evidence and reason." *Id.* (quotation marks and brackets omitted); *see also* OEC 401 - 413 (concerning relevance, admission, and exclusion of evidence).

Simply because a photograph is graphic does not necessarily mean that its admission created a danger of unfair prejudice. *State v. Johnson*, 288 Or App 528, 539, 406 P3d 1091 (2017), *rev den*, 362 Or 389 (2018) (in an EED case, 16 photos of external wounds were properly admitted). Even shockingly prejudicial evidence may be discretionarily admissible if the evidence is highly probative and the court followed the proper inquiry. *State v. Sim*, 292 Or App 488, 493, 496, 423 P3d 751, *rev den*, 364 Or 207 (2018) (in prosecution for pulling a knife on a police officer, trial court did not abuse its discretion to allow in evidence that the police officer was responding to the scene because defendant had been reported to be masturbating in front of children's ballet studio).

A trial court must follow a four-step process known as the *Mayfield* analysis when applying OEC 403. *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987). The first step, and the one that defendant challenges, is that "the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence." Defendant argues that the trial court committed legal error by failing to assess the probative value of each piece of evidence. We find that argument unavailing as the record

demonstrates that the trial court thoroughly discussed each photo with the parties, asked questions of their probative values, and declared exactly what the photos were being allowed in for. We also reject defendant's contention that failing to *correctly* assess the probative value of evidence at the first step of *Mayfield* inherently constitutes legal error. So long as the evidence has any relevant probative value, it is up to the trial court to weigh the probative value for what it is worth, and we review that weighing only for abuse of discretion. *Id.*; *Boauod*, 302 Or App at 72.

Defendant argues that he admitted to the murder and the arson, and thus the trial court was mistaken to assign the photos any probative value. The state responds that a defendant's admission should be treated like an offer to stipulate, and under the circumstances, we agree. "[A] defendant's offer to stipulate to the facts that the state seeks to establish through disputed evidence does not divest that evidence of probative value." *State v. Sim*, 292 Or App at 494; *see State v. Sparks*, 336 Or 298, 309, 83 P3d 304 (2004) (offer to stipulate to autopsy photos did not render the photos inadmissible under OEC 403 because, among other reasons, the stipulations were not of equal evidentiary value to the photographs). We agree that even though defendant had admitted generally to the murder and the arson, the state still had a burden to prove those crimes beyond a reasonable doubt, and the photos were probative to that end.[2]

We agree that the photos were exceptionally graphic (and therefore had potential for considerable prejudicial effect), even by the standard of murder cases. *Contra State v. Barone*, 328 Or 68, 88, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000) ("Although the photographs in question were graphic, they could not be said to be remarkable in the context of a murder trial."). They showed graphic details of the effects of the fire on the victim's body and from a variety of angles, including internal photos. Still, we cannot say that

---

[2] In particular, we accept the trial court's rationale that Exhibits 1 and 2 were probative as to the layout of the crime scene; that Exhibit 5 was probative as to why Dr. Olson could not render certain opinions about the strangulation; that Exhibit 10 was probative to establish the origin of the fire (*i.e.*, not under, on, or near to T); and that Exhibits 9 and 11 were probative as to whether T died before or after the fire had been set.

the trial court abused its discretion when it concluded that the unfair prejudicial effect of Exhibits 1, 2, 5, 9, 10, and 11 did not substantially outweigh their probative value, as its decision was not "to an end not justified by, and clearly against, evidence and reason." *Boauod*, 302 Or App at 72.

As to Exhibits 6, 7, and 8, we note that the state attempted to use them to prove more than what the trial court had allowed, leading the court to subsequently strike them from evidence and instruct the jury to ignore them. Defendant argues that the photos could not be unseen and that the harm could not be undone by instruction. However, even if the instruction was insufficient, we conclude that any error was harmless under the circumstances, whether the exhibits are considered individually or cumulatively, because Exhibits 6, 7, and 8 were less graphic than Exhibits 9 and 11—and we have already concluded that the latter exhibits were properly admitted. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (an error is harmless if "there little likelihood that the particular error affected the verdict"). The trial court did not err by admitting Exhibits 1, 2, 5, 9, 10, and 11, and any trial court error as to Exhibits 6, 7, and 8 was harmless.

## C. *Jury Instructions*

In his eleventh assignment of error, defendant asserts that the trial court erred when it failed to instruct the jury that it had to be unanimous to reject a defense of extreme emotional distress (EED). Defendant concedes that *State v. Wayman*, 339 Or App 9, 568 P3d 232, *rev allowed*, 374 Or 372 (2025) controls. In *Wayman*, we said that "because EED is not an element of second-degree murder that must be disproved by the state, and the existence of EED is instead a mitigating factor that [the] defendant has the burden to prove, jury unanimity is not required to reject the defense and convict [the] defendant of second-degree murder." *Id.* at 11. Here, the trial court instructed that "at least 10 jurors must agree that [defendant] has proven by a preponderance of the evidence that he was acting under the influence of an extreme emotional disturbance at the time of the Murder," which we conclude accurately reflects the instruction that

was upheld in *Wayman*. *Id.* at 22-23.[3] Thus, the trial court did not err by failing to instruct the jury that it had to unanimously reject a defense of EED.

## III. CONCLUSION

The trial court did not err by denying defendant's morning-of-trial motion to elect; by admitting Exhibits 1, 2, 5, 9, 10, and 11; or by failing to give defendant's preferred EED instruction. Any error as to the initial admission and later exclusion of Exhibits 6, 7, and 8 was harmless.

Affirmed.

---

[3] *Wayman*'s instruction read "At least 10 jurors must agree to find the Defendant has established the affirmative defense of extreme emotional disturbance."